IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
{EASTERN DIVISION}
Joseph P. Kinnery US Courthouse
85 Marconi Blvd., Rm. 121
Columbus, OH 43215

FILED
RICHARD W. NAGEL
CLERK OF COURT
2017 JUN 13 AM 10: 56
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

ALTERIK ROGERS
A.K.A. BRIAN MACNEIL
68518 Bannock Road
PO Box 540
St. Clairsville, OH 43950-0540
     PLAINTIFF,

vs.

(SGT.) MANARD REED, et al.
     DEFENDANTS

Case No. 2:14-cv-02750

Judge: Michael H. Watson

Mag. Judge: Terence P. Kemp

---

**PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT &
PLAINTIFF'S RESPONSE TO DEFENDANT'S IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

---

    Plaintiff's Response to Defendant's Motion for Summary Judgment which was due on April 28 or May 1, 2017 was delayed being added to the U.S. Mail by the Belmont Correctional Institution's failure to process the Plaintiff's outgoing legal mail in a timely matter. Plaintiff submitted the mailing for processing by Belmont Correctional Institution prior to the deadline of April 28, 2017, thereby complying with the "mailbox rule". The legal mailing was submitted by the Plaintiff to Belmont Correctional Institution on April 25, 2017, which is within the mailbox rule and meets the deadline of April 28, 2017. As an Institutionalized Inmate, the submission of outgoing legal mail to the Correctional Institution, and thus into the hands of the official "mail system" constitutes the date in which the mailbox rule applies. (SEE: Copy of Personal A/C Withdrawal Check Out-Slip from Belmont Correctional Institute verifying the meeting of the "mailbox rule".) As the court has acknowledged, it received the Plaintiff's Motion for Summary Judgment, in lieu of a response to Defendant's Motion for Summary Judgment on May 4, 2017, which is solely due to the processing time for legal mail by the "agent of the state" Belmont Correctional Institution.

    The Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment is in error in stating that "offers no explanation for the more than three month delay between this Court's deadline for dispositive

motions and Plaintiff's filing" Page 2 Lines 18-20 of Defendant's Response in Opposition. This Court ORDERED that the Plaintiff be given till April 28 or May 1, 2017 for response "due to the clerical error found in the Defendants' Motion for Summary Judgment" to "ensure that the Plaintiff was served a copy of the Defendants' Motion for Summary Judgment (again) and that the Plaintiff esd provided adequate time to respond to that Motion." Page 2 Lines 1-4 of Defendent's Response in Opposition. Therefore, the Plaintiff's Motion for Summary Judgment IS timely and should be accepted as such.

In the Defendant's Opposition, it is stated that the Plaintiff "attempts to pass all of these documents off as 'affidavits', many of them are not notarized." This is false and can be easily ascertained by this Court by review of the Affidavits themselves of which most were Notarized by Attorney Aaron Miller, Esq. The Defendant's attempt to discredit these Affidavits fails on this point. Even those Affidavits that were not notarized initially have been followed up with Notarization that the original Affidavit was correct and accurate.

As for the Defendant's argument that the actual date of the incident, January 30, 2014, was not mentioned in most of the Affidavits, it most be noted that the witnesses were incarcerated at the time in the Jefferson County Jail and had no access to a calender or other means of learning or knowing specific dates due to the restrictive nature of their incarceration, but that the event itself occurred is addressed specifically by the Affidavits.

As for the fact that some of the information provided by the Affidavits was from a secondary source, it is NOT hearsay when someone reports directly the information provided to them by another. Hearsay, only applies when the secondary source is ambivalent rather than specific and the event itself is unspecific. Also, some of the Affidavits address the abusiveness of Sgt. Manard Reed toward inmates at Jefferson County Jail. This addresses his normal behaviors that shows his character and establishes his abuses toward inmates at Jefferson County Jail. For example, is the Affidavit of Zachary Hazeltine in which he states being abused by Sgt. Manard Reed while incarcerated at Jefferson County Jail.

In the Defense's Response in Opposition, the Defense attempts to use a play on words rather than address the issue at hand. That some of the Affidavits use the correct term "escorted", which is what the is the appropriate behavior would be called under normal circumstances, does not take away from the fact that the Plaintiff was dragged while being escorted in handcuffs (restraints) from "A" wing to "E" wing of the Jefferson County Jail. For example, in the Affidavit from Steven West, he stated that the Plaintiff was escorted, but that does not preclude that the Plaintiff was being dragged AS he was being escorted. Escorted in this case refers to the two Correctional Officers, Sgt. Manard Reed and Officer Reese Thompson that physically was taking the Plaintiff from point A to point B. On the other hand, in the Affidavit from Francisco Ortiz, it clearly states that Sgt. Manard Reed "grabs him (referring to the Plaintiff) by the neck of the shirt collar <u>dragging</u> him out the door. Once out the door I (Francisco Ortiz) watched Sgt. Manard Reed push and **drag inmate Alterik Rogers down the hallway by the shirt collar** until I could not see a visual of them anymore."

In regards to the Defendant's Response in Opposition in which it is stated that there was no direct statement in any Affidavits that anyone saw the Plaintiff being hit, the fact that the Defendant purposely hid the assault from visual confirmation by witnesses and within a 'dead area" of video surveillance is not surprising. But, the assault was still heard by witnesses. For example, is the Affidavit from Anthony Elmore, in which is stated " Sgt. Manard Reed and Officer Thompson went into the cell (of the Plaintiff). I (Anthony Elmore) then heard another commotion like it was a physical altercation inside th cell. I then hear inmate Macneil (the Plaintiff) say ' What was that for.....?" This is evidence of the continued abuse and assault of the Plaintiff by the Defendants. The fact that the noise itself indicates the abuse. No other explanation for the sound exists other than the abuse of the Plaintiff which is then followed by the Plaintiff's question as to why he had been abused again. Further, the Plaintiff would have had no other motivation other than the reporting of the abuse when telling Elmore that he was hit twice while the Plaintiff had remained in handcuffs (restraints). The Plaintiff, having been abused by the Defendants who were acting in their "Official Capacity", and thus the Plaintiff had no other option at that time other than to report the abuse to those around him who were available to collaborate the abuse.

To address the statement regarding the fact that the Plaintiff laughed after being abused in his cell, it was the Plaintiff's attempt to not let the abuse by the Defendants "beat him down". When in the environment in which the Plaintiff found himself, incarcerated, it is a requirement of the incarcerated not to appear "weak" to other inmates and Correctional Officers in order to prevent abuse by either. This is a well known fact of being incarcerated. The Plaintiff had to "save face" amongst the people with whom he was serving time or become a victim of further abuse because he would have shown "weakness" to other inmates and Correctional Officers.

It is totally irrelevant that the Plaintiff had suffered previous injuries from a motor vehicle accident on January 16, 2014, while being transported to the Court from the Jefferson County Jail. This suit is not to address those issues that arose from that event, but rather the physical abuse inflicted upon the Plaintiff by the Defendants while in handcuffs (restraints) during a move from from "A" wing to "E' wing of the Jefferson County Jail January 30, 2014. Immediately following the assault by the Defendants, the Plaintiff made verbal requests for medical attention due to his injuries including, but not limited to blurred vision, headache, swelling of the cranium, and bruising. His repeated requests for medical attention were denied for the entire remaining time at Jefferson County Jail from January 30, 2014 through July 6, 2014.

The Plaintiff is entitled to Judgment as a Matter of Law in that he was assaulted by the Defendants, there is both Affidavits demonstrating not only the abuse suffered by the Plaintiff, but also that the abuse he suffered is a pattern of illegal behavior and abuse by the Defendants. (See: Sol Rose, III, Plaintiff, v. Sgt. Maynard Reed, et al., Defendants. Case No. 2:12-cv-977 UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION 2014 U.S. Dist. LEXIS 80899)

Regarding the lengthy commentary regarding any possible verbal abuse by the Plaintiff toward other

inmates or Correctional Staff, it is totally irrelevant. The Plaintiff vehemently denies the allegations of threats to other inmates or Correctional Staff. The Defense has no collaborating witnesses for these falsehoods. Rather, these falsehoods and alleged verbal threats are means to justify the abuse and assault of the Plaintiff by the Defendants after the fact. The fact that the Plaintiff was restrained in handcuffs, regardless of anything he said, does not give the Defendants the ability to abuse or assault the Plaintiff under Color of Law. It is not acting in their Official Capacity to abuse or assault an inmate who has been restrained. Being restrained, the inmate is thus unable to offer resistance and is unable to offer harm to himself or others. Nothing said be the Plaintiff is relevant to his right to not be abused or assaulted.

To address the "Reply in Support of Defendant's Motion for Summary Judgment, III. -

This Court ORDERED that the Plaintiff be given till April 28 or May 1, 2017 for response "due to the clerical error found in the Defendants' Motion for Summary Judgment" to "ensure that the Plaintiff was served a copy of the Defendants' Motion for Summary Judgment (again) and that the Plaintiff esd provided adequate time to respond to that Motion." Page 2 Lines 1-4 of Defendent's Response in Opposition. Therefore, the Plaintiff's Motion for Summary Judgment IS timely and should be accepted as such. The extra attempt to discredit the Plaintiff's Motion for Summary Judgment by repeating the failed argument that it was not timely fails and thus should be given no standing with regards to Plaintiff's Motion. (SEE: Copy of Personal A/C Withdrawal Check Out-Slip from Belmont Correctional Institute verifying the meeting of the "mailbox rule".)

Again, the Defendant attempts to argue as to whether the Plaintiff threatened other inmates, including David Dameron, and Sgt. Reed, which is again totally unrelated to the fact the the Defendant assaulted the Plaintiff while he was in handcuffs/restraints. The Plaintiff vehemently denies the allegations of threats to other inmates or Correctional Staff. The Defense has no collaborating witnesses for these falsehoods. Rather, these falsehoods and alleged verbal threats are means to justify the abuse and assault of the Plaintiff by the Defendants after the fact. The fact that the Plaintiff was restrained in handcuffs, regardless of anything he said, does not give the Defendants the ability to abuse or assault the Plaintiff under Color of Law. It is not acting in their Official Capacity to abuse or assault an inmate who has been restrained. Being restrained, the inmate is thus unable to offer resistance and is unable to offer harm to himself or others. Nothing said be the Plaintiff is relevant to his right to not be abused or assaulted.

Regarding Page 7, "Reply in Support of Defendant's Motion for Summary Judgment, III. - The Defendant attempts to add additional information not provided henceforth prior to this document in which they allege that the

Plaintiff did resist and "'giving a difficult time going into cell #431 (Administrative Segregation Cell). The definition of "a difficult time" is not a legal term and has no clear explanation as to the level of resistance. That the Plaintiff was verbally contesting being sent "to the hole" for jokingly speaking to other inmates regarding the television is NOT resisting, but rather protesting the injustice of the move. (See Incident Report # 10741 from Jefferson County Sheriff's Office). The defendant offers no evidence or documentation that the Plaintiff was setting off alarms by kicking the door to cell #431. And even if he had, it would not be relevant to the Plaintiff's Motion for Summary Judgment for being assaulted by Sgt Reed prior to and inside cell #431 while he was in handcuffs/restraints. Plaintiff acknowledges that he was yelling and attempting to get the attention of Correctional Staff for Medical Treatment for the injuries inflicted by Sgt Reed in violation of Plaintiff's right not to be assaulted or abused while in custody and under restraint. The defendant denied Medical Treatment to the Plaintiff. The Plaintiff clearly was seeking treatment by yelling and attempting to get the attention of correctional staff as stated by the Defendant.

The arguments put forth be the defendant in an attempt to justify the assault of the Plaintiff, that not every touch by correctional staff is a violation of the rights of the Plaintiff does not apply. Each case history sited by the Defendant applies to the necessity to subdue an individual to gain or regain control of the situation. In this case, the Plaintiff was already subdued in that he was handcuffed and in restraints. If was not necessary what-so-ever for Sgt Reed to assault the Plaintiff, cause injury, or otherwise manhandle the Plaintiff. See: Grawley v. Drury, 567 F.3d 302 (6th Cir. 2009) - "the general consensus among all cases is that officers cannot use force... on a detainee who has been subdued" and "is not resisting arrest"; see also Bultema v. Benzie County, 146 Fed. Appx. 28, 37 (6th Cr. 2005) (unpublished) - "when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed". As noted in Bultema, it is clearly established that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." Id. At. 35. Although Bultema is an unpublished opinion, the Courts have reached the same conclusion in a number of reported opinions. See, e.g. [26] Champion v. Outlook Nashville, Inc., 380 F.3d 893, 905 (6th Cir. 2004) (holding that no reasonable officer would strike a handcuffed arrestee in the head); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) ("A reasonable person would know that spraying mace on an ... incapacitated person ... would violate the right to be free from excessive force"); McDowell, 863 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" (force). Thus even if it were unclear whether the Fourth or Fourteenth Amendment governs Roger's excessive force claims, the legal norms underlying those claims are nevertheless clearly established. This opens the Defendants to the tort claim of the Plaintiff as the assault on his person was not in a way justified and violated the Plaintiff's rights under State Law, and both the Ohio and U.S. Constitution.

The Plaintiff is fully justified in using Rose v. Reed, 2014 U.S. Dist. Lexis 80899, to demonstrate that there is a habitual violation of the rights of inmates in their custody, including assault and physical as well as verbal abuse. That the Plaintiff in that case settled does not in a way negate the fact that the Defendant did assault him and likewise has continued this pattern of abuse by assaulting the Plaintiff. By settling, the Defendant acknowledges that he has committed the assault against the victim and Plaintiff in Rose v. Reed, and has now again committed the same criminal action by assaulting the Plaintiff, Mr. Rogers.

The Plaintiff is entitled to Summary Judgment in his favor for the grievous assault by the Defendant who clearly violated the rights of the Plaintiff by assaulting him while in handcuffs/restraints contrary to law. The degree of long term damage from this assault is not relevant to the violation of the Plaintiff's rights not to be assaulted, and not be subject to abuse at the hands of Officers of the Court. The Plaintiff's degree of suffering long term can not be determined until that long term has transpired. The fact that the Plaintiff continues to suffer the ill effects of the assault by the Defendants in excess of three years goes directly to the fact of long term effects of the assault.

The Plaintiff hereby moves this Honorable Court to Grant the Motion for Summary Judgment.

*Alterik Rogers*

ALTERIK ROGERS
A.K.A. BRIAN MACNEIL
A654-770
68518 Bannock Road
PO Box 540
St. Clairsville, OH 43950-0540

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the "PLAINTIFF'S REPLY IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT & PLAINTIFF'S RESPONSE TO DEFENDANT'S IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was mailed by regular U.S. Mail to the UNITED STATES DISTRICT COURT, FOR THE SOUTHERN DISTRICT OF OHIO, {EASTERN DIVISION}, Joseph P. Kinnery US Courthouse, 85 Marconi Blvd., Rm. 121, Columbus, OH 43215 and to Attorney J. Stephen Teetor at Two Miranova Place, Suite 700, Columbus, OH 43215-5098 on this ___5___ day of June, 2017.

# Personal A/C Withdrawal Check Out-Slip

**Institution:** BECI

**Name:** Attorney. M. Stephen. Tector

**Address:** Two Miranova Place, Suite 100

**City:** Columbus  **State:** OH  **Zip Code:** 43215

☑ Postage ☐ Copies ☐ ID

**Date:** 4-25-17 4:25-17

**Dollars:** 3.40  **Cents:** —

Check-out CK # _____

RECEIVED APR 27 2017 Belmont Cashier's Office

The inmate's signature on this withdrawal request verifies that the information listed above has been read to or by the inmate and is correct. In the event of an error in the Cashier's which results in the return of this package, the inmate shall assume financial responsibility.

**Inmate's Signature:** Arthur Rogers  **Number:** 654770  **Block & Cell Number:** 4B30

**Approved By:** [signature]  **Witnessed:** [signature]  **Date Processed:** _____

**Ship VIA:** _____

DRC 1004 (Rev. 3/01)  DISTRIBUTION: WHITE - Cashier  CANARY- Inmate  Pink-  ACA 4046

# Personal A/C Withdrawal
## Check Out-Slip

| | U S6.02 P6 | |
|---|---|---|
| | Dollars: 2 | Cents: 63 |

Institution: BECI

Name: [signature] Date: 4-25-17

Address: U.S. dist. ct. office of clerk
85 MARCONI

City: Columbus State: Ohio Zip Code: 43215

RECEIVED APR 27 2017 Belmont Correctional Institution Cashiers Office

☑ Postage ☐ Copies ☐ ID ☐ Misc. _____ ☐ Check-out CK # _____

The inmate's signature on this withdrawal request verifies all information listed above has been read to or by the inmate and is correct. In the event of an error in the address which results in the return of this package, the inmate shall assume financial responsibility.

Inmate's Signature: [signature] Number: 654776 Block & Cell Number: 4B 30

Approved By: [signature] Witnessed: [signature] Date Processed: _____

Ship VIA: _____

DRC 1004 (Rev. 3/01)    DISTRIBUTION: WHITE - Cashier    CANARY- Inmate    Pink- _____    ACA 4046