IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alterik Rogers,  :

     Plaintiff,  :

  v.  :  Case No. 2:14-cv-2750

Sgt. Manard Reed, et al.,  :  JUDGE MICHAEL H. WATSON
                                    Magistrate Judge Kemp
     Defendants.  :

REPORT AND RECOMMENDATION AND ORDER

Plaintiff, Alterik Rogers, currently an inmate at the Belmont Correctional Institution, filed this action under 42 U.S.C. §1983 alleging that his constitutional rights were violated during events which allegedly occurred while he was an inmate at the Jefferson County Jail. This matter is now before the Court on the following motions: (1) Mr. Rogers' motion to proceed to a jury trial; (2) Defendants' motion to compel; (3) Mr. Rogers' motion to disclose; and (4) Defendants' motion for summary judgment. For the following reasons, it will be recommended that Defendants' motion for summary judgment (Doc. 42) be granted in part and denied in part. The motion to proceed to a jury trial (Doc. 38), motion to compel (Doc. 39), and motion to disclose (Doc. 40) will be denied as moot. Mr. Rogers' malicious prosecution claim shall be stayed pending the resolution of <u>State v. Rogers</u>, Jefferson Cty. Case No. 14CR012.

    I. <u>Factual and Procedural Background</u>

This case was filed by Mr. Rogers on December 29, 2014, alleging that his constitutional rights were violated by Sgt. Maynard Reed, Officer Reece Thompson, and the Jefferson County Sheriff's Department. (Doc. 1). He subsequently amended his complaint to add the Jefferson County Prosecuting Attorney as a

defendant. (Doc. 6). A motion for partial dismissal was filed on behalf of all defendants other than Sgt. Reed. (Doc. 14). The Court subsequently dismissed all claims against the Jefferson County Sheriff's Department and the Jefferson County Prosecuting Attorney, and all claims against Officer Thompson in his official capacity. (Doc. 30, 32).

The facts of this case are summarized based on the pleadings and evidence provided by the parties. The evidence submitted includes a number of witness statements submitted by Mr. Rogers, an affidavit of Mr. Rogers, incident reports prepared by Defendants and another officer, the deposition of Mr. Rogers, and various other documents. On January 4, 2014, Mr. Rogers was arrested in Jefferson County and charged with felonious assault, contempt, having a weapon while under disability, tampering with evidence, menacing by stalking, and a firearm specification. (Doc. 42, Ex. A). He was subsequently indicted on February 5, 2014 for the charges of felonious assault and having a weapon under a disability related to that arrest. Id., Ex. B. On the same day, Mr. Rogers was indicted on a third count for menacing by stalking, related to the events which occurred while he was incarcerated at the Jefferson County jail on January 30, 2014, which gave rise to this lawsuit. This last charge alleged that Mr. Rogers made a physical threat or threats against Sgt. Reed. Id. The menacing by stalking charge was subsequently severed into a separate indictment. Following the filing of this lawsuit, the Jefferson County Court of Common Pleas stayed the criminal case until the resolution of this matter. Id., Ex. 7. Mr. Rogers was ultimately convicted by a jury of the charges of felonious assault and having a weapon under a disability, and on June 30, 2014, he was sentenced to fourteen years' incarceration. Id., Ex. C.

The events giving rise to this case took place while Mr. Rogers was held at the Jefferson County Jail following his January 4, 2014 arrest. On January 30, 2014, Mr. Rogers was on lockdown in a cell with other inmates, and some of them were watching television. (Doc. 1, ¶9). By his own admission, Mr. Rogers made a comment in the cell to other inmates that he was going to "two-piece the drunk driver" ("drunk driver" referring to the inmate who was operating the television remote control). (Doc. 42, Ex J; hereinafter "Rogers Depo."). According to Mr. Rogers, "two-piece" is a slang term that means to stop. Id. Defendants contest this definition, asserting that the term actually means to punch someone twice. (Doc. 42, p. 3). Mr. Rogers admits to making the statement, but claims that he did so in jest and other inmates were laughing and joking along with him. Rogers Depo., pp. 114-118, 122.  Sergeant Reed overheard Mr. Rogers' comment and yelled at him, accusing him of threatening his porter, David Dameron, and ordered another officer to open the cell. Rogers Depo. p. 114. Subsequently, Sgt. Reed and Officer Thompson came to Mr. Rogers' cell, ordered him to pack his belongings, and told him he was going to solitary confinement. Rogers Depo., p. 117. Mr. Rogers packed up his belongings and began walking down the staircase, verbally protesting and saying "I am going to the hole for what? This is some pussy ass stuff. I didn't do nothing to nobody." Id. 118.

According to Mr. Rogers, at this point, and for no reason, Sgt. Reed grabbed him by the neck, hit him in the head, and dragged him down the stairs. Id. At some point while Mr. Rogers was being dragged to the segregation cell, Sgt. Reed pushed his head into the sally port door and Officer Thompson handcuffed him from behind. Id. 120-126. Sgt. Reed then punched him in the back of his head with a fist, struck him in the temple, hit him 7-8 times, and knocked him unconscious.  The beating continued when

Mr. Rogers was placed in the segregation cell, still handcuffed. Id. 120-126, 129-130. Officer Thompson, who reported to Sgt. Reed, held onto Mr. Rogers' handcuffed wrists and stood by as Sgt. Reed engaged in the attack. Id. 141-144; (Doc. 42, Ex. E).

Mr. Rogers has also submitted his own affidavit (Doc. 47-1) and statement, as well as a number of signed statements from individuals who were either in the group cell with him, or near enough to see and/or hear at least portions of the incident. These statements are from Francisco Ortiz, Duan Harris, Steven West, Dustin Schockow, Randall Fazio, Jr., and Anthony Elmore. (Doc. 1-1; Doc. 47-1). Duan Harris states that he was working the remote control to the television when Mr. Rogers made the remark about "two-piecing the drunk driver." He explains that in this context "driving drunk" means tuning into a television program that no one wants to watch. Id. p. 7. These individuals broadly corroborate Mr. Roger's version of events, stating that Mr. Rogers did not threaten Sgt. Reed's trustee/porter or Sgt. Reed. Id. 7-8. However, none of the fellow inmates would have been able to see the alleged attack that occurred in or near the segregation cell. Mr. Rogers also provides signed statements from Zachary Hazeltine and William Vandyke which speak generally to the reputation of Sgt. Reed as a corrections officer. (Doc. 1-1). Because those statements do not bear on the facts of this case they will not be considered by the Court.

The majority of actions of Officer Thompson which give rise to the allegations against him did not occur within view of any of the fellow inmates who provided statements. Mr. Rogers testified that once he and Defendants arrived at the entry to the segregation cell, "they are pushing me, boom, boom....Reese Thompson grabs my hands because your first reaction is to protect yourself. Reese Thompson put my hands behind my back, put the cuffs on... [Thompson] pushed me in there, held my hands,

[Thompson] - Sergeant Mana [sic] Reed started pushing me in my head, started punching me in my temple. Reese let go, because Reese was in shock." Rogers Depo, p. 130. Mr. Rogers speculated that Officer Thompson was angry with Sgt. Reed for engaging in the attack, but did not intervene to stop the assault. Id.

Defendants have submitted copies of Serious Incident Reports prepared by Sgt. Reed, Officer Thompson, and Officer Debbie Milewsky, which relay a very different version of events. (Doc. 42, Ex. D-F). These reports state that Mr. Dameron was changing garbage bags within the group cell and Mr. Rogers asked him to turn the television off, but Mr. Dameron did not comply and continued to do his work. The officers assert that Mr. Rogers threatened to "two-piece" Mr. Dameron, at which time Sgt. Reed ordered Mr. Rogers into segregation for threatening a fellow inmate. A "voluntary statement" given by Mr. Dameron confirmed that Mr. Rogers said he was going to "two piece" him (Mr. Dameron). (Doc. 42, Ex. K). Mr. Rogers disputes this. He asserts that he did not say anything to Mr. Dameron. Rogers Depo, pp. 116-117. The officers' accounts reflect that Mr. Rogers resisted being removed from the cell and verbally threatened Sgt. Reed, stating that he would "see you in the streets" and "send bullets your way." Id. Defendants assert that the least amount of force necessary was used to get Mr. Rogers into the segregation cell. Id.

Mr. Rogers alleges that the attack caused him injuries including dizziness, blurred vision, loss of balance, headaches, memory loss, slurred speech, and swelling of the cranium, all injuries consistent with head trauma. Rogers Depo. 139-147. He identified at his deposition a video screen shot of a knot on his head following the incident. Id. 131. Mr. Rogers asserts that he was denied medical treatment despite his requests for help. Id. Defendants argue that Mr. Rogers was unable to distinguish any

alleged injuries from this incident from alleged injuries sustained in a car accident approximately two weeks earlier. Rogers Depo. 146. Defendants have also provided medical records from Jefferson County Jail and Belmont Correctional Institution (where he was eventually transferred) which do not reflect any reported pain or injury related to the alleged attack by Sgt. Reed.

In addition to the physical assault, Mr. Rogers also alleges that Sgt. Reed falsified charges against him in relation to the incident which prompted the Jefferson County Prosecutor to indict him for menacing by stalking. Mr. Rogers asserts that prior to being incarcerated, he lived five blocks from Sgt. Reed and knew him and some of his family members. Additionally, the individual with whom Mr. Rogers was charged with assaulting while in the Jefferson County Jail was married to Sgt. Reed's first cousin. Mr. Rogers asserts that this situation caused Sgt. Reed to retaliate against him, which is why he physically attacked him at the jail, then falsely reported that Mr. Rogers had threatened him, and convinced the prosecutor to bring the menacing by stalking charge against him. Rogers Depo. P. 124-125, Doc. 47-1. Mr. Rogers provides a number of affidavits from other inmates, confirming that they were aware that Sgt. Reed wanted to do harm to Mr. Rogers, and that they never heard Mr. Rogers threaten Sgt. Reed. These affidavits support Mr. Rogers' version of events, and some inmates state that they specifically heard Sgt. Reed threatening to go to the prosecutor to convince her to charge Mr. Rogers with something. (Doc. 47-1; Affids. of Willis Stackhouse, William Hughes, Steven West, Francesco Ortiz, Dustin Schockow, and Randall Fazio, Jr.).

The original complaint further alleged that Jefferson County Sheriff Abdalla, in his official capacity, was responsible for the actions of Sgt. Reed and Officer Thompson. Mr. Rogers also

alleged that Sgt. Reed and Ms. Hanlin, the Jefferson County Prosecuting Attorney, conspired to maliciously prosecute him based on false written statements created by Sgt. Reed. (Doc. 6). The Court previously dismissed all claims against the Jefferson County Sheriff's Department and the Jefferson County Prosecuting Attorney, and all claims against Officer Thompson in his official capacity. Rogers v. Reed, 2015 WL 6144922 (S.D. Ohio Oct. 20, 2015), adopted, 2015 WL 7069668 (S.D. Ohio Nov. 13, 2015).  For the remainder of this Report and Recommendation and Order, "Defendants" shall refer to the remaining defendants, Sgt. Reed and Officer Thompson.

Defendants filed their motion for summary judgment on January 31, 2017, the deadline for such motions according to the Court's scheduling Order. (Doc. 42). As of April 6, 2017, Mr. Rogers had not responded. The certificate of service in Defendants' motion showed that it had been mailed to the Jefferson County Jail, so the Court directed Defendants to serve Mr. Rogers at Belmont Correctional Institution, where he is now incarcerated. Defendants filed a notice informing the Court that it had originally served the motion for summary judgment on Mr. Rogers at the correct address, but the certificate of service was incorrect. Mr. Rogers filed a document entitled "motion for summary judgment" on May 4, 2017. (Doc. 47). Because the deadline for filing motions for summary judgment has passed, the Court construes this as a response to Defendants' motion for summary judgment. Defendants argue that Mr. Rogers' response to the redelivered motion was untimely because it should have been filed by May 1, 2017. Defendants filed a timely reply on May 19, 2017. Mr. Rogers filed another document on June 13, 2017, as an additional memorandum in opposition to Defendants' motion for summary judgment.  Pursuant to the Local Rule 7.2(a)(2) of this Court, additional memoranda beyond the response and reply to a

motion are not permitted without leave of Court. Thus, the Court will not consider the June 13, 2017, filing in its consideration of Defendants' motion. However, the Court will exercise its discretion to consider Mr. Rogers' May 4, 2017, response to the motion for summary judgment.

## II. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). "[I]f the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted." Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

B. Discussion

Defendants argue that summary judgment should be granted in their favor because Mr. Rogers cannot provide evidence to satisfy the components of an excessive force claim and because Defendants are entitled to qualified immunity. Defendants do not address Mr. Rogers' malicious prosecution claim, i.e. that Sgt. Reed filed a false statement against him, resulting in him being indicted for menacing by stalking.

1. Official Capacity Claims Against Sgt. Reed

Sgt. Reed was not a movant in the previously ruled upon motion to dismiss. To the extent that Mr. Rogers intends to sue Sgt. Reed in his official capacity, the suit is treated as one against the municipality, i.e. Jefferson County. See, e.g., Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" (citation omitted)). The Court undertook a full analysis of the official capacity claims in its Report and Recommendation ruling on the motion to dismiss. (Doc. 30). Mr. Rogers has not alleged that he was harmed by a policy or custom of Jefferson County. Janis v. Marcum, 77 Fed.App'x 308, 310 (6th Cir. 2003). He has also not requested any prospective relief, which may also allow a lawsuit to go forward against a defendant in his or her official capacity. Gean v.

Hattaway, 330 F.3d 758, 776 (6th Cir. 2003). Without fully revisiting the analysis therein, for the reasons set forth previously by the Court in its Report and Recommendation (Doc. 30) with respect to the official capacity claims against other defendants, the Court will recommend dismissal of all claims against Sgt. Reed in his official capacity.

2. Excessive Force

To establish a prima facie claim under §1983, a plaintiff must satisfy two elements: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right. See, e.g., Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978); Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 33 (6th Cir. 1992) (per curiam). Conclusory allegations are insufficient to state a claim under §1983. Rhodes v. Chapman, 452 U.S. 337 (1981). Mr. Rogers alleges that his constitutional rights were violated when the Defendants used excessive force against him while he was incarcerated at the Jefferson County Jail.

The substantive constitutional right raised by Mr. Rogers in his excessive force claim arises under the Due Process Clause of the Fourteenth Amendment, because he was a pretrial detainee at the time of the incident. While Estelle v. Gamble, 429 U.S. 97 (1976) and the Eighth Amendment Cruel and Unusual Punishment clause, by their terms, apply only to persons who have been convicted of a crime and, therefore, are subject to punishment, persons who are incarcerated while awaiting trial cannot be treated less favorably than persons who are in prison following conviction. Consequently, although they are not protected by the Eighth Amendment, pretrial detainees are protected by the Fourteenth Amendment Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); see also Leary v. Livingston Cnty.,

528 F.3d 438, 443 (6th Cir. 2008) (explaining that pretrial detainees bring excessive-force claims under the Fourteenth Amendment Due Process clause, whereas, "convicted prisoners may bring excessive-force claims under the Eighth Amendment . . . and 'free citizen[s]' may bring such claims under the Fourth Amendment"). "The substantive component of Fourteenth Amendment due process protects citizens against conduct by law enforcement officers that 'shocks the conscience.'" Harris v. City of Circleville, 583 F.3d 356, 365 (6th Cir. 2009) (citations omitted). The Court of Appeals has held that the Due Process Clause protects a pretrial detainee from "excessive force that amounts to punishment." Id. (citations omitted). Under the Due Process Clause, "an excessive-force claimant must show something more than de minimis force." Leary, 528 F.3d at 443 (citations omitted). A de minimus use of force by a prison official is not normally a constitutional violation, but a §1983 plaintiff may succeed on his claim even if he suffers only a minor injury. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).

Defendants argue that, even by Mr. Rogers' own description of the events, the use of force was de minimus. They assert that Mr. Rogers' allegations that he was hit in the head multiple times to the point of unconsciousness are "wholly unsupported." Accepting Mr. Rogers' testimony as true for these purposes, the majority of the alleged excessive force occurred at the entrance to and in the segregation cell, which was up to about 100 yards from the cell he had been removed from. Rogers Depo., p. 125. However, there is corroboration from other inmate witnesses that Sgt. Reed's use of force was excessive:

> "...[Sgt. Reed] then grabs him by the neck of the shirt collar dragging him out of the door. Once out the door I also watch Sgt. Reed push and drag inmate Alterik Rogers down the hallway by the shirt collar until I could not see a visual of him anymore."

-11-

Doc. 1-1; Statement of Francisco Ortiz.

> "...when they finally got to the cell Sgt. Maynard Reed and C/O Thompson went into the cell, I heard another commotion like it was a physical altercation inside the cell, I then hear inmate [Rogers] say 'now what was that for' and begin to laugh. I know [Rogers] personally, so when I hear the commotion I asked him 'what's up and is he alright?' He stated to me 'he was good' and that 'Sgt. Reed has just beat me in my head.'"

Id. Statement of Anthony Elmore.

Defendants assert that because Mr. Rogers admits that he laughed during the attack and because he did not seek medical attention, this proves that the force used was de minimus. However, Mr. Rogers testified that his reaction to being punched was to laugh because he was in "so much pain." Rogers Depo., pp. 131-132. He also alleges that despite his requests for medical assistance he was not permitted to see a nurse or doctor for his head injuries. The lack of reference to head injuries in the medical records submitted by Defendants is also not conclusive. Those medical records were purportedly gathered in relation to another lawsuit filed by Mr. Rogers arising from a car accident while in the custody of Jefferson County. The fact that nothing was written down in those records regarding head injuries does not necessarily lead to a conclusion that no injury existed. In addition, in his deposition, Mr. Rogers' identified a knot on his head from some video footage taken after the alleged incident. Rogers Depo. 130-131.

Defendants further argue that there is no question that there was a rational basis for the use of force against Mr. Rogers because he admitted to making a threat against another inmate (i.e. the "two-piece" comment) and he threatened Sgt. Reed. However, all of the supporting statements and affidavits of inmate witnesses to the incident corroborate Mr. Rogers'

assertion that the "two-piece" comment was made in jest and that he did not resist or threaten Mr. Dameron or Sgt. Reed. When "reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." Schreiber v. Moe, 596 F.3d 323, 333 (6th Cir. 2010) (internal citations and quotation marks omitted). Here, there is clearly a dispute over what happened. The incident reports filed by the corrections officers state that Mr. Rogers threatened Mr. Dameron and Sgt. Reed, and resisted being moved to segregation. This is directly contradicted by Mr. Rogers' and the other inmates' accounts of the events. The Sixth Circuit Court of Appeals considered a similar case involving a claim of excessive force by an inmate, in which there were directly conflicting accounts of the events by inmates as opposed to corrections officers. Alspaugh v. McConnell, 643 F.3d 162 (6th Cir. 2011) (reversing the District Court's grant of summary judgment for the defendants because it had engaged in an improper credibility determination). Similar to Mr. Rogers, the plaintiff in Alsbaugh contended that he was not resisting the officer, and he showed evidence that he suffered an injury. There is narrow exception to the Alspaugh holding where the inmate plaintiff concedes that the use of force was necessary, minimal force was applied, and only minimal injuries occurred, but that is not the case here. See Lockett v. Suardini, 526 F.3d 866 (6th Cir. 2008) (dispute between statements of corrections officers and inmates was insufficient to overcome defendants' motion for summary judgment where those concessions were made by the plaintiff). Mr. Rogers does not concede that any force was necessary or that minimal force was applied. Sgt. Reed was the primary actor in the alleged excessive use of force, and clearly there exists a genuine factual dispute as to whether he did what Mr. Rogers claims he did.

Officer Thompson's role was much more limited, according to Mr. Rogers, and involved restraining him from behind, handcuffing him, pushing him into the segregation cell, and failing to intervene to stop the alleged assault. The Court of Appeals has recognized that a correctional officer who observes an unlawful beating may be liable under §1983 notwithstanding the fact that he or she did not entirely participate in the assault. Gregg v. Ohio Dept. of Youth Services, 661 F.Supp.2d 842, 855 (S.D. Ohio 2009), citing McHenry v. Chadwick, 896 F.2d 184, 187 (6th Cir. 1990). In McHenry, only one officer was alleged to have actively beaten the plaintiff, but other officers were present and did not intervene to stop the assault. Those officers were also found liable because they breached their duty to protect the plaintiff. Id. In this case, the Court previously denied the defendants' motion to dismiss the claims against Officer Thompson because it stated a plausible claim on the fact of the pleading for an alleged failure to intervene. The Court stated that "at best, Officer Thompson did not intervene to stop the alleged assault he was witnessing and, at worst, made it easier for Sgt. Reed to carry out the assault." (Doc. 30, p. 12). Mr. Rogers did not articulate in the complaint or amended complaint that Officer Thompson participated in the assault, only that he restrained Mr. Rogers and failed to intervene. However, in his deposition he testified that Officer Thompson pushed him into the segregation cell. Defendants' accounts of the events is squarely at odds with that of Mr. Rogers. As discussed above, summary judgment is not the appropriate forum in which to make credibility determinations.

Because there are genuine issues of material fact in dispute which go to the crux of the allegations of excessive force, it will be recommended that Defendants' motion for summary judgment be denied as to that claim.

### 3. Malicious Prosecution

Defendants do not address Mr. Rogers' malicious prosecution claim in their motion for summary judgment. "In order to prevail on a §1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right. Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citations and quotations omitted). To succeed on a malicious prosecution claim under §1983, a plaintiff must prove that "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." Webb v. United States, 789 F.3d 647, 659 (6th Cir. 2015) (citing Sykes v. Anderson, 625 F.3d at 308-09).

The problem with this claim is that so long as the state case remains stayed, Mr. Rogers will be unable to satisfy the final element of malicious prosecution, i.e. that the state criminal proceeding was resolved in his favor. In essence, the claim has not yet accrued. It is standard practice to stay proceedings on such a claim until the state court criminal matter is concluded. See e.g. Kennedy v,. City of Villa Hills, 2008 WL 650341 (E.D. Ky. March 6, 2008). Consequently, further proceedings on the malicious prosecution claim will be stayed pending the resolution of the criminal case in the Jefferson County Court of Common Pleas.

### 4. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because "the undisputed facts show that Defendants used a minimal amount of force..." (Doc. 42, p. 14). Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies. First, the Court should identify the specific constitutional right that the defendant or defendants allegedly violated. Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established. Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated. If so, qualified immunity is unavailable. See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996). This Court has discretion to determine which of the prongs of the qualified immunity analysis should be addressed first in view of the particular circumstances of a given case. Pearson v. Callahan, 555 U.S. 223 (2009). As discussed above, there is a factual dispute as to whether Defendants violated Mr. Rogers' constitutional rights. If the factual dispute is ultimately resolved in Mr. Rogers' favor then Defendants, as reasonable state officials, would have known that their actions violated clearly established law. Thus, Defendants are not entitled to qualified immunity.

### III. Recommendation and Order

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment (Doc. 42) be granted with respect to the claims against Sgt. Reed in his official capacity and denied in all other respects. Mr. Rogers' motion to proceed to trial (Doc. 38), Defendants' motion to compel (Doc. 39), and Mr. Rogers' motion to disclose (Doc. 40) are denied as moot.

Further, all proceedings on the malicious prosecution claim are stayed pending the resolution of State v. Rogers, Jefferson Cty. Case No. 14CR012.

PROCEDURE ON OBJECTIONS/MOTION FOR RECONSIDERATION

If any party objects to the Report and Recommendation on the summary judgment motion, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

As to the orders issued, any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due

seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.


/s/ Terence P. Kemp
United States Magistrate Judge